J-S16006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CLIFFORD TAYLOR GREEN | |
| Appellant | No. 212 WDA 2016 |

Appeal from the Judgment of Sentence November 24, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0015533-2014

BEFORE:  MOULTON, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED SEPTEMBER 19, 2017**

Clifford Taylor Green appeals from the November 24, 2015 judgment of sentence entered in the Allegheny Court of Common Pleas following his convictions for persons not to possess a firearm, carrying a firearm without a license, and possession of a controlled substance.[1]  We vacate Green's judgment of sentence on his conviction for carrying a firearm without a license and affirm the judgment of sentence in all other respects.  Because our decision does not alter the trial court's overall sentencing scheme, we do not remand for resentencing.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), and 35 P.S. § 780-113(a)(16), respectively.

The trial court summarized the factual history of this matter as follows:

On October 19, 2014, Borough of Wilkinsburg Police Sergeant Daniel Cuiffi was assisting City of Pittsburgh police with the apprehension of [Green], who was suspected to be in the East Hills section of the City of Pittsburgh near Wilkinsburg. [Green] had escaped from the Renewal Center and was wanted on an active warrant. Sergeant Cuiffi was provided with [Green]'s direction of flight (into a wooded area of the East Hills that borders Wilkinsburg), as well as a description and photograph of [Green].

At approximately 8:50 P.M. Sergeant Cuiffi observed [Green] standing in front of a store in the 1700 block of Montier Street, at the intersection of Laketon Road, Montier Street, and Robinson Boulevard. Sergeant Cuiffi placed a radio call to other officers for backup, and to notify them that he located an individual matching [Green]'s description. Sergeant Cuiffi drove past [Green], turned around, and approached [Green] in his vehicle. At that time, [Green] crossed the street and walked towards the Dollar General store. Sergeant Cuiffi parked his vehicle, opened the door, and told [Green] to stop. [Green] ignored Sergeant Cuiffi and entered the Dollar General store.

Officers Donald Hamlin and Waz[2] arrived on scene, and assisted Sergeant Cuiffi in setting up a perimeter around the Dollar General store. Sergeant Cuiffi covered the rear entrance, Officer Waz covered the front entrance, and Officer Hamlin covered the side entrance. Shortly after entering, [Green] walked to the back of the store, through double doors, into a storage area, and out the side door. Officer Hamlin took [Green] into custody. [Green] was searched incident to arrest, and the officers recovered a small amount of cocaine from [Green]'s front right pants

_____

[2] Officer Waz's first name does not appear in the record.

pocket. Following the search, Officer Waz transported [Green] to the police station.

Sergeant Cuiffi entered the Dollar General store and spoke with staff inside the store. Staff member Addie Thorn directed Sergeant Cuiffi to a firearm on a shelf. Thorn noted that he had cleaned the shelf prior to [Green] entering the store, and there was no firearm present at that time.

While at the station, [Green] was read his **Miranda**[3] Rights. After signing a **Miranda** Rights Waiver Form, Sergeant Cuiffi questioned [Green] about the firearm. [Green] provided a written statement wherein he stated that he had found the firearm in the woods in the East Hills, and discarded it in the Dollar General store because the police were following him.

Approximately one hour later, [Green] called for Sergeant Cuiffi, and requested to add something to his statement. Sergeant Cuiffi provided [Green] with a new statement form, wherein [Green] provided a statement that omitted mention of a firearm, and ended with a request for an attorney. Prior to that time, [Green] had not requested an attorney.

[Green] did not have a license to carry a firearm, and he was charged as noted hereinabove.

Opinion, 7/20/16, at 8-10 ("1925(a) Op.") (internal citations and footnotes omitted).

The procedural history of this matter is as follows:

[Green] was charged by criminal information (CC 201415533) with one count each of persons not to possess a firearm, carrying a firearm without a license, and possession of a controlled substance.

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

On November 20, 2015, [Green] proceeded to a nonjury trial.[4] On November 24, 2015, the Trial Court found [Green] guilty as charged.

> [4] [Green] proceeded to a nonjury trial, wherein the Trial Court incorporated the testimony from the suppression hearing. Nonjury Trial Transcript, November 20, 2015, at 5 (hereinafter "N.T."). Additionally, the Commonwealth presented evidence regarding [Green]'s non-licensure, his Miranda rights form, the affidavit of probable cause, [Green]'s certified conviction, and the crime lab reports. [Green] testified on his own behalf.

On November 24, 2015, [Green] was sentenced by the Trial Court as follows:

Count one: persons not to possess a firearm — three to six years incarceration;

Count two: carrying a firearm without a license — three to six years incarceration, to be served concurrent to the period of incarceration imposed at count one;

Count three: possession of a controlled substance — one to two years incarceration, to be served concurrent to the period of incarceration imposed at count two.

On November 30, 2015, [Green] filed a post sentence motion, which was denied by the Trial Court on January 12, 2016.

This timely appeal followed.

*Id.* at 2-3.

Green raises the following issues on appeal:

1. Should [Green]'s 18 Pa.C.S. § 6106 conviction be vacated because the Commonwealth failed to prove the Concealment, Barrel/Overall Length, and Non-Licensure elements of that crime?

2. Should [Green]'s Confession admitting to having Possessed the Firearm that was found on the shelf of the Dollar General Store – the only evidence presented by the

- 4 -

Commonwealth on the element of Possession – have been excluded pursuant to the *Corpus Del*[*i*]*cti* Rule?

3. Should [Green]'s *Corpus Del*[*i*]*cti* Argument be addressed on the merits, either (A) because it was preserved for appeal when Trial Counsel sought exclusion of [Green]'s confession prior to trial, with the fact that he did so due to a violation of the **Miranda** rule rather than the *Corpus Del*[*i*]*cti* rule being irrelevant since Pa.R.App.P. 302(a) requires only Issues be preserved, not rationales; or, alternatively, (B) because although it was waived by Trial Counsel's failure to assert the *Corpus Del*[*i*]*cti* rationale, that failure constituted an act of ineffective assistance for which the remedy is for the waived *Corpus Del*[*i*]*cti* claim to be addressed?

Green's Br. at 4.

Green challenges the sufficiency of the evidence to support his conviction for carrying a firearm without a license. We apply the following standard when reviewing a sufficiency of the evidence claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Lehman**, 820 A.2d 766, 772 (Pa.Super. 2003) (quotation omitted). In applying this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." **Id.** (quotation omitted). Further, "the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Id.** (quotation omitted). Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Id.**

(quotation omitted). In applying the above test, we must evaluate the entire record. *Id.*

To convict a defendant of carrying a firearm without a license, the Commonwealth must prove beyond a reasonable doubt that: (1) the weapon was a firearm; (2) the defendant did not have a valid and lawfully issued license to carry a firearm; and (3) where the firearm was concealed on or about the defendant's person, it was outside the defendant's abode or place of business. *See* 18 Pa.C.S. § 6106(a)(1); ***Commonwealth v. Coto***, 932 A.2d 933, 939 (Pa.Super. 2007). Green argues that the Commonwealth failed to prove beyond a reasonable doubt that: the firearm was concealed; the firearm in question qualified as a "firearm" within the meaning of section 6106; and Green lacked a concealed-carry license.

We first address Green's contention that the Commonwealth failed to prove beyond a reasonable doubt that he concealed the firearm. In essence, Green claims that even if the evidence was sufficient to prove he **carried** the firearm, it did not establish that he **concealed** it. The Commonwealth concedes, and the record reveals, that Sergeant Cuiffi never testified as to whether he saw Green with a firearm before entering the store or on the video of Green entering the store[4]. *See* Cmwlth.'s Br. at 13. Nonetheless,

_____

[4] Sergeant Cuiffi testified as follows:

*(Footnote Continued Next Page)*

the Commonwealth argues that because Sergeant Cuiffi never testified "that

he did not see a gun in [Green]'s hands . . . the only reasonable implication .

. . is that he did not see the appellant with a gun." *Id.*

We are mindful that our standard of review requires us to view the

evidence in the light most favorable to the Commonwealth as the verdict

winner, and "giv[e] the prosecution the benefit of all reasonable inferences

to be drawn from the evidence." *Commonwealth v. Robinson*, 817 A.2d

1153, 1158 (Pa.Super. 2003) (quoting *Commonwealth v. Widmer*, 744

A.2d 745, 751 (Pa. 2000)). However, we are also mindful that:

> the inferences must flow from facts and circumstances
> proven in the record, and must be of ["]such volume and
> quality as to overcome the presumption of innocence and
> satisfy the jury of the accused's guilt beyond a reasonable
> doubt.["] *Commonwealth v. Clinton*, 391 Pa. 212, 219,
> 137 A.2d 463, 466 (1958). The trier of fact cannot base a
> conviction on conjecture and speculation and a verdict
> which is premised on suspicion will fall even under the
> limited scrutiny of appellate review.

*Id.* (quoting *Commonwealth v. Scott*, 597 A.2d 1220, 1221 (Pa.Super.

1991) (emphasis omitted).

*(Footnote Continued)* —————————

> Q. Let's stop a minute to talk a little more about that
> video. You say the video showed the defendant walking
> into the store. Did it show anything else?
>
> A. The video didn't show anything other than Mr. Green
> walking into the store and bearing left and that's where --
> that was the extent of that video.

N.T. Suppression, 9/9/15, at 9.

In **Commonwealth v. Nickol**, 381 A.2d 873, 876-77 (Pa. 1977), our Supreme Court rejected the appellant's challenge to the trial court's failure to grant his motion in arrest of judgment with respect to a charge of carrying a firearm without a license.[5]  The appellant argued that the Commonwealth failed to establish that he had concealed the firearm.  **Id.** at 876.  The Court concluded:

> At trial, the prosecution called . . . the driver of the get-away vehicle.  She testified that she saw no gun in the possession of Nickol either at the time he left the vehicle to enter the supermarket or at the time he reentered the automobile.  Other testimony elicited at trial substantiates that Nickol did possess and use a firearm in the interim.  The issue of whether the gun which appellant used might have been concealed on his person when he entered the supermarket was a question for the finder-of-fact.  We believe the evidence in the instant case was sufficient to give rise to a permissible inference that Nickol did conceal the weapon.

**Id.** at 876-77.  Thus, in **Nickol**, a witness had testified the appellant was not in visible possession of a firearm.  However, because other evidence established that the appellant was later seen in possession of a firearm, a reasonable inference of concealment arose.

Here, the Commonwealth posits that because Sergeant Cuiffi did not testify that Green possessed a firearm, the "only reasonable implication" is

---

[5] At the time, section 6106 read as follows: "(a) Offense defined.  No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter."  **Nickol**, 381 A.2d at 877 n.6 (quoting former 18 Pa.C.S. § 6106(a)).

that Green concealed a firearm. We disagree. Another "reasonable implication" is that Sergeant Cuiffi simply did not see a firearm that was otherwise visible on or about Green's person. It is also possible that Sergeant Cuiffi saw a firearm on or about Green's person but failed to say so when he testified. Further, although Green placed the firearm on the store shelf, this fact does not establish that the firearm was concealed before Green entered the store. Given Sergeant Cuiffi's silence[6] as to whether he saw Green in possession of a firearm, despite viewing video of Green entering the store,[7] we conclude that the Commonwealth did not prove the element of concealment beyond a reasonable doubt. Accordingly, because the Commonwealth did not prove the essential element that Green concealed a firearm, we vacate his judgment of sentence on the conviction for carrying a firearm without a license.

Because we have vacated Green's judgment of sentence for carrying a firearm without a license, we need not address his other arguments on this

_____

[6] Even if this silence reasonably supports the inference that from his vantage point Sergeant Cuiffi did not **see** a firearm, it does not similarly support the further inference that the firearm was concealed.

[7] Sergeant Cuiffi testified that on the night of the crime, after viewing the video, he attempted to obtain a copy but was told that a district manager would have to retrieve the video for him. This did not occur. Sergeant Cuiffi returned to the store and made other requests for the video over a number of months, but by his fourth request, he was advised that the video had probably been taped over. N.T. Suppression, 9/9/15, at 10. Accordingly, the video was not part of the record at trial and was never viewed by the trial court.

issue. The trial court sentenced Green to 3 to 6 years' incarceration on his conviction for carrying a fireman without a license, to be served concurrent to a term of 3 to 6 years' incarceration on the persons not to possess a firearm conviction. Thus, our decision does not upset Green's overall sentencing scheme, and we need not remand for resentencing. *See Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa.Super. 2006) ("[I]f our decision does not alter the overall scheme, there is no need for a remand.").

In his next two issues, Green challenges his firearm convictions on the ground that his confession should have been excluded on the basis of the *corpus delicti* rule.[8] He argues that we should review this issue because, either, it has not been waived despite a failure to raise the issue before the trial court, or because trial counsel was ineffective for failing to raise the issue before the trial court.

Because Green did not raise his *corpus delicti* claim before the trial court, we conclude that it is waived.[9] *See* Pa.R.A.P. 302(a) ("Issues not

_____

[8] As we have previously explained: "The *corpus* [*delicti*] rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." *Commonwealth v. Dupre*, 866 A.2d 1089, 1097 (Pa.Super. 2005) (quotation omitted). "The Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the *corpus delicti* of a crime, but the evidence must be more consistent with a crime than with [an] accident." *Id.* at 1098.

[9] Green argues that because his motion to suppress properly raised the "issue" of his statement's admissibility, his failure to offer the "rationale"
*(Footnote Continued Next Page)*

raised in the lower court are waived and cannot be raised for the first time on appeal."); *see also Andrews v. Cross Atl. Capital Partners, Inc.*, 158 A.3d 123, 130 (Pa.Super. 2017) (finding claim waived where argument on appeal advanced a different legal theory than theory offered at trial and post-trial); *Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa.Super. 2008) ("[F]or any claim that [is] required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court.")

We further conclude that we cannot review Green's ineffective assistance of counsel claim on this direct appeal. Green argues that if we find his *corpus delicti* claim is waived, then his trial counsel was ineffective for seeking to suppress his confession based on only *Miranda*. It is well-settled that "absent certain circumstances, 'claims of ineffective assistance of counsel are to be deferred to [Post Conviction Relief Act] review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal.'" *Commonwealth v. Harris*, 114 A.3d 1, 5 (Pa.Super. 2015) (quoting *Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013)); *see also*

_(Footnote Continued)_ —————

of *corpus delicti* did not constitute waiver. **See** Green's Br. at 59-62. We disagree. The failure to raise the *corpus delicti* argument before the trial court deprived the Commonwealth of the opportunity to present relevant evidence and argue then, as it does now, that the requirements of the rule were met.

*Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) ("[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review."). Accordingly, because circumstances warranting review of Green's ineffectiveness claim on direct appeal do not exist, we dismiss that claim without prejudice. *See Grant*, 813 A.2d at 739 (dismissing appellant's claims of ineffectiveness of counsel without prejudice).

Judgment of sentence vacated in part and affirmed in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2017